1

2

3

4

5

6

7

8

9

10                        UNITED STATES DISTRICT COURT

11                       CENTRAL DISTRICT OF CALIFORNIA

12

13    UNITED STATES OF AMERICA              CR 08-20 ABC

14                   Plaintiff,             ORDER DENYING DEFENDANT RICARDO
                                            SERVANDO FRUTOS-LOPEZ'S MOTION
15           v.                             TO DISMISS INDICTMENT

16

17    RICARDO SERVANDO FRUTOS-LOPEZ,

18                   Defendant.

19

20

21        Pending before this Court is Defendant Ricardo Servando Frutoz-

22   Lopez's ("Defendant") Motion to Dismiss Indictment ("Motion"), filed

23   on September 2, 2008.  The Government filed an Opposition on September

24   15, 2008.  Defendant filed a Reply on Friday, September 19, 2008.  The

25   Motion came on for hearing on Monday, September 22, 2008.  However,

26   because the Court had not received the Reply before the hearing, the

27   Court heard a brief oral argument from Defendant and adjourned the

28   hearing in order to consider the Reply.  After consideration of the

1 materials submitted by the parties, argument of counsel and the case

2 file, Defendant's Motion is **DENIED** for the reasons indicated below.

3 **I.   FACTUAL AND PROCEDURAL HISTORY**

4    The facts material to this Motion are undisputed.  In 1999,

5 Defendant Ricardo Servando Frutoz-Lopez, an alien, was convicted of

6 second degree robbery, an "aggravated felony" under 8 U.S.C. §

7 1101(a)(43)(F), and sentenced to a three-year term of imprisonment.

8 Subsequently, Defendant was placed in removal proceedings by the

9 Immigration and Naturalization Service.  At Defendant's removal

10 hearing, the immigration judge ("IJ") advised Defendant that because

11 he had been convicted of an aggravated felony, he was not eligible for

12 relief from removal.  After the IJ explained to Defendant the basis

13 for his ruling, invited Defendant to respond, and apprised Defendant

14 of his right to appeal, Defendant waived his right to appeal and was

15 removed from the United States pursuant to the removal order, for the

16 first time, on March 28, 2001 (the "underlying removal").

17    At some point thereafter, Defendant returned illegally to the

18 United States, and, in late September 2005, was found in the District

19 of Nevada.  The Government filed an indictment charging Defendant with

20 a violation of 8 U.S.C. § 1326, unlawful entry of deported alien.  *See*

21 *United State v. Ricardo Servando Frutos-Lopez*, District of Nevada Case

22 No. CR 05-405-JCM-GWF (filed October 26, 2005) ("the Nevada criminal

23 case").  Defendant moved to dismiss the indictment on the ground that

24 his deportation on March 28, 2001, was unlawful.  Defendant argued

25 that the IJ erred in finding that his conviction for second degree

26 robbery was an "aggravated felony" and determining that Defendant was

27 not eligible for two forms of relief from removal that are available

28 to those who are not aggravated felons.  Defendant argued that the

1  IJ's error caused the IJ to incorrectly advise Defendant of his

2  rights, and that Defendant's waiver of his appeal rights was therefore

3  invalid.

4       Magistrate Judge George Foley, Jr.,agreed with Defendant and

5  ruled in his Findings & Recommendations that Defendant's robbery

6  conviction did not render him an "aggravated felon" for purposes of

7  the removal statute because California law allowed for a defendant to

8  be convicted of the substantive offense under an "aiding and abetting"

9  theory.  (See Def.'s Mot Ex. B, Findings & Recommendations.)  In an

10  Order issued September 19, 2006, Nevada District Court Judge James C.

11  Mahan accepted the recommendation.  (See Def.'s Mot. Ex. C, Order.)

12  Accordingly, the Nevada Court concluded that a conviction for aiding

13  and abetting a robbery did not fall within the general offense of an

14  aggravated felony, that the IJ erroneously failed to advise Defendant

15  that he was eligible for certain forms of relief from deportation, and

16  therefore ruled that Defendant's waiver of his appeal rights was not

17  "considered and intelligent."  (Def.'s Mot. Ex. B 11:10-19.)

18  Accordingly, the Nevada Court dismissed the indictment charging

19  Defendant with violating 8 U.S.C. § 1326.

20       Although Defendant's section 1326 indictment was dismissed, on

21  September 29, 2006, Defendant was removed from the United States for

22  the second time.  Thereafter, Defendant was once again found in the

23  United States.  Based on the underlying removal order and the new

24  crime committed by Defendant's unlawful re-entry into the United

25  States, the Government charged Defendant with a new violation of

26  section 1326, which is the subject of the instant Motion.

27       Defendant now argues that by obtaining the dismissal in the

28  Nevada criminal case, he successfully collaterally attacked the

1  underlying removal order, thereby achieving the invalidation of that

2  removal order.  As such, Defendant argues, the current indictment –

3  which is based upon that underlying removal order – is fatally flawed

4  and must be dismissed.

5      In opposition, the Government argues, first, that the dismissal

6  in the Nevada criminal case did not invalidate the underlying removal

7  order; rather, it simply dismissed the criminal proceedings then

8  before the Nevada District Court.  Second, the Government argues that

9  a Supreme Court opinion issued in 2007, Gonzales v. Duenas-Alvarez,

10 549 U.S. 183 (2007), overturned the Ninth Circuit case upon which the

11 Nevada Court relied in its order dismissing the indictment.  As such,

12 the Government argues, the underlying removal order is a sound basis

13 for the current section 1326 indictment.

## II.   LEGAL STANDARD

15     Under Federal Rule of Criminal Procedure 12(b), "[a]ny defense,

16 objection or request which is capable of determination without the

17 trial of the general issue may be raised before trial by a motion."

18 Fed. R. Crim. Pro. 12(b).  A motion to dismiss is generally "capable

19 of determination" before trial "if it involves questions of law rather

20 than fact."  United States v. Nukida, 8 F.3d 665, 669 (9th Cir. 1993);

21 United States v. Shortt Accountancy Corp., 785 F.2d 1448, 1452 (9th

22 Cir. 1986).  In considering a pretrial motion to dismiss all or part

23 of an indictment, the court "must presume the truth of the allegations

24 in the charging instruments."  United States v. Jensen, 93 F.3d 667,

25 669 (9th Cir. 1996).  Further, the court should not generally consider

26 "evidence not appearing on the face of the indictment."  Id.

27     However, a court "may make preliminary findings of fact necessary

28 to decide the legal questions presented by the motion," so long as its

1 preliminary findings do not "invade the province of the ultimate

2 finder of fact."  Nukida, 8 F.3d at 669; see also Jensen, 93 F.3d at

3 670 (Fletcher, J., concurring)("There is no prohibition against the

4 consideration of extrinsic evidence for purposes of a Rule 12(b)

5 motion to dismiss."); United States v. Covington, 395 U.S. 57, 60

6 (1969) (Rule 12(b) "permits factual hearings prior to trial if

7 necessary to resolve issues of fact peculiar to the motion").

8                           **III.   DISCUSSION**

9     Defendant is charged with being "found" in the United States in

10 violation of 8 U.S.C. § 1326.  The elements of that crime are: (1) the

11 defendant is an alien; (2) the defendant was deported/removed from the

12 United States; and (3) the defendant voluntarily reentered and

13 remained in the United Stats without the consent of the Attorney

14 General.  United States v. Godinez-Rabadan, 289 F.3d 630, 632 (9th

15 Cir. 2002).  Defendant contends that, as a matter of law, the

16 Government cannot prove the second element of the crime because the

17 removal upon which the indictment is based was invalidated by Judge

18 Mahan's September 2006 order affirming Judge Foley's Findings &

19 Recommendations and dismissing the indictment in the Nevada criminal

20 proceedings. (See Mot. 11:1-2, referring to Judge Mahan's order as

21 "invalidating Mr. Frutos-Lopez's underlying removal order.")

22 Defendant contends that section 1326(d) expressly provides for such a

23 collateral attack on the underlying deportation order in the context

24 of a section 1326 criminal proceeding.  The Government argues that

25 Defendant's interpretation of section 1326(d) is incorrect.

26 //

27 //

28 //

**A.    The District of Nevada Criminal Proceedings Did Not Invalidate the Underlying Removal.**

Section 1326(d) states, in relevant part:

> In a criminal proceeding under this section, an alien may
> not challenge the validity of the deportation order
> described in subsection (a)(1) of this section or subsection
> (b) of this section unless the alien demonstrates that-
>
>> (1) the alien exhausted any administrative remedies
>> that may have been available to seek relief against the
>> order;
>>
>> (2) the deportation proceedings at which the order was
>> issued improperly deprived the alien of the opportunity
>> for judicial review; and
>>
>> (3) the entry of the order was fundamentally unfair.

Assuming Defendant's Nevada motion satisfied all elements of section 1326(d)[1], the question is whether, through such a challenge, Defendant achieved the vacatur or invalidation of the underlying removal order.

As both parties acknowledge, Congress enacted section 1326(d) in 1996 as a codification of the Supreme Court's decision in United

---

[1]    For the record, the Court notes that although the Nevada District Court's Order discusses several cases that apply section 1326(d), the Order itself does not expressly apply that section. Rather, the Order is focused primarily upon determining whether Defendant's prior conviction was an "aggravated felony."  Thus, while it is clear from the facts and analysis therein that the Court found, in essence, that Defendant demonstrated elements (2) and (3) of 1326(d), it is not clear that the Court considered whether Defendant satisfied the first requirement, exhaustion of administrative remedies.  Furthermore, the absence of an express discussion of section 1326(d) renders it difficult for this Court to conclude that the Nevada Court dismissed the indictment pursuant to section 1326(d).

States v. Mendoza-Lopez, 481 U.S. 828 (1987).  In Mendoza-Lopez, the

Court determined "whether an alien who is prosecuted under 8 U.S.C. §

1326 for illegal entry following deportation may assert in that

criminal proceeding the invalidity of the deportation order."

Mendoza-Lopez, 48 U.S. at 830.  The Court addressed this question as

one of both statutory interpretation and constitutional

interpretation.

In its statutory analysis, the Court resolved a Circuit split

over whether section 1326 itself provides for such a challenge to the

use of the deportation in a criminal prosecution under section 1326.

After reviewing the language of section 1326, its legislative history

and related legislation, the Court held that section 1326 does not

contemplate such a collateral challenge to the legality of the

underlying deportation proceedings:

> In United States v. Spector, 343 U.S. 169 (1952), we left open
>
> whether the validity of an underlying order of deportation may be
>
> challenged in a criminal prosecution in which that prior
>
> deportation is an element of the crime.  Today, we squarely
>
> confront this question in the context of § 1326, which imposes a
>
> criminal penalty on any alien who has been deported and
>
> subsequently enters, attempts to enter, or is found in, the
>
> United States. . . . The first question we must address is
>
> whether the statute itself provides for a challenge to the
>
> validity of the deportation order in a proceeding under § 1326.
>
> Some of the Courts of Appeals considering the question have held
>
> that a deportation is an element of the offense defined by § 1326
>
> only if it is "lawful," and that § 1326 therefore permits
>
> collateral challenge to the legality of an underlying deportation

1     order.  The language of the statute, however, suggests no such

2     limitation, stating simply that "[a]ny alien who has been

3     arrested and deported or excluded and deported," 8 U.S.C. §

4     1326(1), will be guilty of a felony if the alien thereafter

5     enters, attempts to enter, or is at any time found in, the United

6     States. 8 U.S.C. § 1326(2). . .  Nor does the sparse legislative

7     history contain any evidence that Congress intended to permit

8     challenge to the validity of the deportation in the § 1326

9     proceeding.

10     The Court thus concluded that the text and background of section

11 1326 indicated no congressional intent to sanction challenges to the

12 validity of deportation orders in proceedings under section 1326.

13     The Court then proceeded to the constitutional question of

14 whether due process requires that a defendant be permitted to

15 challenge the use of a deportation proceeding as an element of a

16 criminal offense.  The Court held that the due process clause does

17 require that a defendant be permitted to bring such a challenge,

18 determining that where the deportation proceeding effectively

19 eliminates the right of the alien to obtain judicial review, the

20 defendant could collaterally attack the underlying deportation

21 proceeding.  Mendoza-Lopez, 481 U.S. at 837-839.  It is this portion

22 of Mendoza-Lopez – the Court's constitutional holding – that was

23 codified in the 1996 amendment, adding subsection 1326(d) to section

24 1326.

25     The Mendoza-Lopez Court found only that because there were due

26 process violations in the underlying removal order "[t]he government

27 may not, therefore, rely on those orders as reliable proof of an

28 element of a criminal offense."  Id. 481 U.S. at 842.  The Court did

not determine that such a challenge would effect the vacatur of the removal order; indeed, the Court did not squarely answer that question.  However, in footnote 17, the Court explained the limits of its holding: "We note parenthetically that permitting collateral challenge[s] to the validity of deportation orders in proceedings under § 1326 does not create an opportunity for aliens to delay deportation, since the collateral challenge we recognize today is available only in criminal proceedings after reentry."  Id. 481 U.S. at 849 fn 17.  This qualification suggests that the underlying removal or deportation order remains pending despite a successful collateral attack upon it in a section 1326 prosecution.  Furthermore, the whole opinion describes the "collateral attack" as an attack on the use of the underlying order as proof of an element of a subsequent crime.  In other words, Mendoza-Lopez determined that a collateral attack on the underlying removal order was a *defense* to the new section 1326 charge. Section 1326(d) codifies that constitutional defense to a new charge; it does not establish a means to achieve the reversal or vacatur of the underlying removal order.

    Other cases adjudicating challenges to section 1326 charges on the ground that the underlying removal order was unlawful provide circumstantial support to this Court's conclusion: in each instance, the court granted only the limited relief of the dismissal of the indictment or the reversal of the conviction, not the vacatur of the underlying removal order.  See, e.g., United States v. Ubaldo-Figueroa, 364 F.3d 1042 (9th Cir. 2004) (finding that defendant met the three elements of section 1326(d), affirming that defendant's underlying deportation order deprived him of due process because the IJ did not inform him that he had the right to appeal his removal

9

1  order, and reversing his convictions under section 1326 "because his

2  removal order cannot stand as a basis for his convictions."); see also

3  United States v. Lopez-Hernandez, 2007 U.S. Dist. 16251, 16 (N.D. Cal.

4  2007) (where removal proceeding violated due process "we may

5  invalidate the criminal charges stemming therefrom").  By contrast,

6  Defendant has presented no coherent theory or authority for his

7  position that section 1326(d) does anything more than codify a

8  constitutional defense; his proposition that the Nevada District

9  Court's dismissal of his section 1326 indictment effected the vacatur

10  of the underlying removal order remains unsupported.

11       Furthermore, Defendant's motion to dismiss the Nevada indictment

12  achieved only what it sought: the dismissal of the indictment.  There

13  is no evidence that Defendant moved for the vacatur of the removal

14  order; nor does it seem that he could achieve that result.  Indeed,

15  that the Nevada order only dismissed the indictment and did not

16  vacate, invalidate, overturn or stay the underlying removal order is

17  borne out by the language of the Magistrate Judge's Findings &

18  Recommendations, recommending only that "Defendant's Motion to Dismiss

19  Indictment Based on Prior Unlawful Deportation [] be GRANTED."

20  (Def.'s Ex. B 11:18-19.)

21       Accordingly, the Nevada criminal proceedings only dismissed the

22  then-pending prosecution under section 1326, and left the underlying

23  removal order undisturbed.

24  **B.    The Effect of Gonzales v. Duenas-Alvarez**

25       Shortly following Defendant's second deportation (after the

26  Nevada criminal proceedings), the Supreme Court, resolving a circuit

27  split, overturned the Ninth Circuit precedent relied upon by the

28  Nevada Court and held that a conviction secured under an "aiding and

abetting" theory itself falls within the generic definition of the underlying crime.  Gonzales v. Duenas-Alvarez, 549 U.S. 183 (2007). Specifically, in Duenas-Alvarez, the Defendant was convicted of "aiding and abetting" a theft; the Supreme Court held that for purposes of the Immigration and Nationality Act and the removal provisions therein, one who "aids and abets" a theft commits a crime that falls within the scope of the generic definition of "theft":

> Immigration law provides for removal from the United States of an alien convicted of "a theft offense (including receipt of stolen property). . . for which the term of imprisonment [is] at least one year." 8 U.S.C. § 1101(a)(43)(G) (emphasis added); § 1227(a)(2)(A). The question here is whether the term "theft offense" in this federal statute includes the crime of "aiding and abetting" a theft offense. We hold that it does.  And we vacate a Ninth Circuit determination to the contrary.

Duenas-Alvarez, 529 U.S. at 817.  Defendant concedes this reading of Duenas-Alvarez.  (See Mot. 10:12-18.)

Under the rule set forth in Duenas-Alvarez, Defendant's 1999 conviction for second degree robbery is a conviction for an aggravated felony, regardless of whether he was convicted as a principal or under an aiding and abetting theory.  As such, during Defendant's underlying removal proceedings, the IJ correctly found that Defendant had been convicted of an aggravated felony and that Defendant was not eligible for any relief from removal.  Accordingly, the IJ correctly advised Defendant of his rights before Defendant waived his right to appeal.

Defendant argues that Duenas-Alvarez cannot be applied to this case because Judge Mahan's order invalidated the underlying removal order.  However, as discussed above, although Judge Mahan's order

1  barred the underlying removal from being used to prove an element of

2  the then-pending section 1326 charge, his order did not vacate the

3  removal order itself.  Defendant's argument that applying Duenas-Lopez

4  to this case would effectively revive a vacated removal order, or

5  otherwise "ignore" Judge Mahan's order, is therefore unavailing.

6  Indeed, under "the principle that [while] statutes operate only

7  prospectively, judicial decisions operate retrospectively," Rivers v.

8  Roadway Exp., Inc., 511 U.S. 298, 311-312 (1994) (citation omitted),

9  it is clear that Duenas-Lopez, an intervening Supreme Court decision,

10  governs this Court's resolution of the Motion.  Accordingly, the Court

11  finds that the underlying removal proceedings provide a sound basis

12  for the second element of the current indictment under section 1326.

13      Because the underlying removal order was never vacated or

14  otherwise invalidated by Judge Mahan's order, and because Duenas-Lopez

15  demonstrates that the IJ did not commit error during the removal

16  proceedings, Defendant's challenge to his indictment fails.

### IV.  CONCLUSION

18      For the foregoing reasons, the Court **DENIES** Defendant's Motion to

19  Dismiss the Indictment.

21  **DATED:** October 20, 2008

                                   Audrey B. Collins
                      _____
                                **AUDREY B. COLLINS**
                      **UNITED STATES DISTRICT COURT**

12